The court now calls case number 118845, People of the State of Illinois v. Fred Clark. Are you ready to proceed?  Madam Chief Justice, Honorable Justices of the Supreme Court, Counsel, may it please the Court, I am Assistant State's Attorney Alan Spellberg, representing the People of the State of Illinois. This Court has long held that the Lesser Included Offense Factor is intended to provide an important third option to trier's effect. Specifically, if the trier effect is uncertain that the defendant has been proven guilty beyond a reasonable doubt of the charged offense, the trier fact can consider lesser included offenses as an important option rather than simply finding the defendant not guilty. That is precisely what occurred in this case. Specifically, although a defendant was charged with armed robbery with a firearm and aggravated vehicular hijacking with a firearm, and although the victim testified the defendant had a gun when the defendant beat him over the head and took his car and property, the trial court, sitting as trier effect, gave the defendant the benefit of the doubt and found that because the weapon was used as a bludgeon, it would be treated as such. Accordingly, the trial court found the defendant guilty of the lesser offenses of armed robbery with a dangerous weapon other than a firearm and aggravated vehicular hijacking with a dangerous weapon other than a firearm. Despite the fact that the defendant never objected to the trial court's actions, the appellate court ruled that the trial court's finding of guilty of those lesser offenses amounted to automatic reversible error under the second prong of plain error. Specifically, the appellate court held that the offenses of armed robbery with a dangerous weapon other than a firearm and aggravated vehicular hijacking with a dangerous weapon other than a firearm are mutually exclusive from the charged offenses from the firearm forms of the offenses. The court further held that it amounted to automatic reversible error under the second prong because a defendant's right to notice of the charged offenses and the violation of that violated the integrity of the judicial process. Those rulings by the appellate court were clearly wrong. As this court held long ago, the appropriate determination for whether or not an offense amounts to a lesser included offense of the charged offenses is not simply based upon the statutory elements of the offenses. You cannot simply compare the abstract elements of the offenses. Rather, under the charging instrument approach, long held by this court, formally adopted in Novak, and then refined in Colton, the proper remedy is to look at the broad outline, the main foundation of the charges, as appear in the charging instrument to allow for a greater amount, a greater range of lesser included offenses than would exist under the charging instrument approach. Mr. Spelver, it's true that in Colton we indicated you don't have to state every element of the can be inferred from the charging instrument, but how can we infer that the defendant possessed a weapon other than a firearm from a charging instrument that specifically alleged that he possessed a firearm? Well, Your Honor, that goes directly to the relationship that firearms have with all the other dangerous weapons. This court has long held for nearly 100 years that firearms are dangerous weapons and that firearms can be dangerous weapons per se if they are utilized or if they're armed and capable of, loaded and capable of being utilized, or they can be used dangerous by their mere characteristics that they can be used as a bludgeon. That's precisely what happened here. And so when a defendant is placed on notice that he's been charged with the offense of armed robbery with a dangerous, with a firearm, he is being told, in broad sense, that he is committed the offense of armed robbery with a weapon, that he is armed with a weapon. It is a particular type of dangerous weapon. It is a firearm. And so... May I ask you this? You've cited in your brief the cases that I think you're alluding to that have discussed what a dangerous weapon is or is not, and apparently there's been four categories that have been evolving through the years, a loaded weapon is per se, et cetera. We've made four different categories of how to determine what's a dangerous weapon or not. All of those cases were before the statute was amended. The statute was amended, and it seems to be trying to make it easier. You don't have to worry about whether a firearm is a dangerous weapon or not. It's either is a firearm or it's not a firearm. That seems to be the way the statute's drawn. So in response to Justice Thomas' question, if they're categorically different, is a firearm, is not a firearm, how does is, how does one infer from is that it's going to mean is not? Your Honor, and I recognize the mutually exclusive nature of the statutes, and clearly if this court had adapted the abstract elements approach, absolutely these would not be considered less than putative offenses. But because of the broader nature of the charging it's own approach, the inconsistency in the statutory language does allow for the re-conference, and I guess the best example I can give you is the Lander case, the Lander case which is cited in our reply brief. That involved a defendant who was charged with murder, solicitation of murder for hire, exclusively charged with solicitation for murder for hire, and this court specifically held that the lesser included offense of solicitation of an aggravated battery is a reasonable inference. Even though the charges specifically authorized only that the defendant had the specific intent to have the intended victim killed, this court held that it could be inferred, and that reasonable and common sense approaches could allow for a prior effect to find that it was solicitation of an aggravated battery. And the reason why I stress that as a comparator is because even though the legislature in Public Act 91404 did separate out firearms offenses, they didn't amend the longstanding definition of what this court has identified as dangerous weapons. The legislature did not say that firearms are not dangerous weapons. What the legislature said was that firearms are particularly egregious dangerous weapons when utilized in certain offenses, and there will be additional penalties if that is proven beyond a reasonable doubt. And that's what happened in this case, because although the evidence showed that it was a gun from our perspective, the prior fact was unwilling to find beyond a reasonable doubt that it was a gun. Is that true? When the court found the defendant guilty, the court said that the defendant used the weapon as a bludgeon and pistol-whipped the victim. The definition of pistol-whipping is hitting someone in the head with a handgun. And at sentencing, the court specifically said that he gave the defendant the benefit of the doubt because the gun was not fired. So is it really true that the court found that the state failed to prove the defendant possessed a firearm? Your Honor, I think the important distinction there is proof beyond a reasonable doubt, that the trial judge sitting in the prior effect has the discretion to rule that this wasn't a sufficient evidence of a firearm. Right or wrong, that was his finding, and we can't challenge it. Clearly the judge believed that it was a gun. Clearly, so we know from the judge's statements at sentencing, the judge believed that he was affording the defendant a modicum of justice. As we cite in our reply brief, the McCoy case from this court said that despite the fact that trial judges may act out of their own view of justice, doesn't mean this court can prevent them from doing it, but they really shouldn't be doing that in the guise of public policy. That was what happened here. But what you're saying is, it sure looks like there was sufficient evidence to prove beyond a reasonable doubt that this was a firearm, but the court decided because maybe the additional 15-year sentence, that you'd just find something else. That's purely supposition on my part, but it would seem to appear what occurs from the record. But whatever the judge's motivation, right or wrong, as a prior effect, he had the authority to reject the evidence and find the defendant not guilty of the charged offense. The question though then is, does he have the additional authority to find the defendant guilty of the lesser offenses, the non-firearm form? And it is our position that he certainly does, based upon the broader range of offenses that are authorized under the charging instrument approach. As this court in Colton very clearly said, the NOVAC approach, as was adopted in 1994, was very narrow, too narrow, too inflexible, too much like the very inflexible, the rigid mechanical abstract elements test. Because all NOVAC did was look at the charging instrument itself and see if all the elements were there. What Colton said was, no, even if the elements aren't there, we can look broader. We can determine whether or not they can be reasonably inferred, the other elements. And it is our position that in this case, the allegation that the defendant was armed with a firearm, by common sense, means the defendant was armed with a weapon. And if he was armed with a weapon, that means that he was on notice that the jury, that the trier fact could find him guilty of the lesser offenses armed with a dangerous weapon other than a fire. And aren't they completely different? Your Honor, yes, they are completely different, and that's actually the significance of the Colton discussion, I believe, because much like aggravated criminal sexual assault and aggravated criminal sexual abuse are completely different offenses, because the legislature has distinguished between sexual penetration and sexual conduct. This Court in Colton said the trier fact can find the defendant guilty of that lesser offense, because it is a lesser included offense, because sexual conduct can be inferred from an allegation of sexual penetration. The legislature, just like this, with the mutually exclusive nature of the statutes, has rendered the sexual conduct exclusive from sexual penetration. And so, therefore, I think it's a very similar scenario. It seems to me that if the trial judge made findings that the gun was used as the bludgeon, it was a gun, period. It seems to me also that it doesn't matter under the statute whether the, how the firearm was used. It's, as other, a carry's possessors are as otherwise armed with a firearm. You talk about the charging instrument approach and how in the aggravated battery, you allege the firearm was used as the bludgeon. But that doesn't help you, does it? Because you have to have the main outline of the lesser offense in the actual charged offense. The actual charged offenses here were aggravated vehicular hijacking and not armed robbery. Well, Your Honor, that is... Not burger, battery, excuse me. That is my opponent's argument that it is inappropriate to look to the entire indictment. As you stated, this indictment was not simply two charges of armed robbery with a firearm and aggravated vehicular hijacking with a firearm. It was a multi-count indictment, including, most importantly for these purposes, the charge of aggravated battery by discharge with a weapon other than by discharge of a firearm. But it still alleges a firearm. It is, yes, Your Honor, it is. How do we get around that? But the broad outline in terms of the factual description of what the defendant did, and that has always been the focus of the charging instrument approach. How is the defendant's conduct described? What is the factual allegations? Because it doesn't necessarily have to be the elements of the offense. And so in this case... Let's talk about that for a minute. You acknowledge in the first part of your brief and here today that this court applies the charging instrument approach to determine lesser-included offenses. But then you argue that the statute creates a fourth-tiered framework where each greater offense necessarily includes the lesser offenses, and that under this statutory approach the dangerous weapon version of the offense is a lesser version of the firearm in every case. And isn't this really just a call for this court to apply the abstract elements approach to lesser-included offenses rather than the charging instrument approach? No, Your Honor, it's not. The discussion about the four-tiered approach within the statute is to show the legislative intent underlying the changes in Public Act 91404. As Justice Tice stated, the legislature was trying to make it easier and more clear that if it's a firearm it should be a greater offense. But under the charging instrument approach it has never been simply an examination of the elements. It has never simply been a discussion as to what the legislature wanted. It's a factor to understand whether or not this offense amounts to that lesser-included offense, but it has never been the decisive determination. Instead the proper determination is how was the factual description of the offenses alleged in the crime. And one of the cases that I'd like to point you to is the case of People v. Jones, which is cited in our reply brief, which involved, like this, a charge of an armed robbery where the defendant was found guilty not of armed robbery but of theft. And even though there was no allegation anywhere within the charging instrument of permanent deprivation of the property, this court held that common sense dictated that if you are charged with armed robbery you have sufficient notice that you could be found guilty of a theft because clearly you were trying to take something from the victim. It is an analogous scenario in the sense that it was a finding by a trier fact for a lesser penalty for a lesser offense out of whatever motivation by the trier effect resulting in a conviction that was not clearly identifiable based upon the elements of the offense. But instead looking to the broader charging instrument, this court said common sense dictated the outcome. May I ask you in your next few moments to move on to the second very important piece of this case. If we believe that this is error, we know there was no objection, what happens next? And we understand what the appellate court did, we understand your argument is that this is not our second prong error. So if it's not second prong error, what is it? Is it first prong error? Well, it could be reviewed under first prong claim error. How would that work? Based upon an assertion of prejudice to the defendant, which is consistent with the way that this court has always viewed allegations of insufficient notice in the charging instrument. I mean, generally, help me make this transition, this is the issue I really want to get to. In the first prong, we usually talk about, we look at the evidence and we try to determine if this error, how it would have perhaps shifted the result and whether or not the evidence was closely balanced. How would that, what evidence would we be looking at to decide whether this was closely balanced? Mr. Your Honor, I understand the difficulty of the analysis. The difference, though, is that first prong claim error is not always simply look at the evidence at trial to decide whether or not there was prejudice. Sometimes you look to the evidence at a pretrial motion, sometimes you look to the evidence at a post-trial motion. So first prong claim error can be based upon the evidence that is pertinent to that allegation, to that error. So in this case, the evidence would be, is there any evidence of the defendant being prejudiced from lack of sufficient notice? The appellate court here found the defendant was deprived of sufficient notice. We can look at the record in this case and we can determine absolutely that there is no evidence of lack of sufficient notice because, as I stated, the defendant was charged with the firearm forms of armed robbery with a dangerous weapon and aggravated vehicular hijacking with a firearm and was found guilty of the lesser offenses of the dangerous weapon forms. But the defendant was clearly on notice that he could be found guilty of, that he was charged with committing an offense of these offenses while armed with a weapon. And more importantly, it did not in any way affect his defense at trial because his defense at trial was he was the victim of a misidentification. So nothing about what occurred at the trial could have affected his sufficiency of notice. That is precisely the type of analysis that this court has engaged in in the past is in the Henderson case that appears in our reply brief, is in the Quadrado case that is in our opening brief. It has always been engaged in a prejudice analysis for charges of, for claims of insufficient notice. If I could take one step back for a second though, getting back to Justice Karmeier's question regarding the other counts, this court has always held that multi-count indictments are supposed to be construed as a whole. You are not simply to look at a single indictment, a single count in the indictment. The Colton case and the Novak case were single-count indictments. So there would be no basis in those cases to look at the additional counts. There would be no additional factual charges to make. To take the crab view, the narrow view that the defendant is espoused in here that you should only look to the charged offenses is really reminiscent of the Novak limited approach. And I feel like that is very important because this court has not had to engage in a multi-count indictment analysis under the charging instrument approach. People versus Baldwin in 2002 said that the defendant can properly be convicted of an uncharged offense when the uncharged offense is identified by the charging instrument as a lesser offense of the one charged. So that's a little bit different from looking at the other counts. But even if you can do that, how can he be found guilty of not possessing a firearm where the trial judge said he possessed a firearm? Well, Your Honor, again, that comes to the deference and discretion given to the trier of fact. The trial judge sitting is the trier of fact. That they can make determinations of the facts, right or wrong, correct or not, as to whether or not the evidence proved beyond a reasonable doubt that it was a firearm as identified by the statute. But there's no question about that, is there? In this case, he said it was a gun. Yes, Your Honor. He said it was a gun, but he also explicitly found as a matter of law sitting as a trier of fact that it was not a gun, that it would only be treated as a bludgeon. That's clearly within his authority as a trier of fact. If it was a jury who had done the exact same thing, we wouldn't have the benefits of the findings, the explicit findings, but the jury could have made that same sort of determination. Can we just separate the legal argument for a minute? I'm just curious. How often, in your experience, are judges doing this? In this case? I mean, should we be sending a message to judges in this particular case? Because it strikes me that in this case, because the defendant smacked the victim in the head with a firearm, the trial judge convicts him of crimes with a lower penalty, right, on the basis that he used a dangerous weapon other than a firearm. So if the defendant had merely kept the gun in his person without using it, it's the more severe penalty, right, in this case? If he had just had the gun, had it in his pocket, it's a more severe penalty than, in this case, the pistol would be. It's proof beyond reasonable doubt, yes. Yeah. And that, to me, seems absurd. So I'm wondering how often this is happening out there. I mean, the trial judge apparently wanted to give the defendant a break for not firing the gun, but the statute provides a break for not firing the gun. So in your experience, are judges doing this often? Well, Your Honor, as I'm sure you're well aware, we have numerous petitions for leave to appeal where the appellate court has reversed, like the appellate court here. So yes, in my experience, it is not an uncommon scenario. As my opponent points out in his brief, every court that has ruled that way, that has addressed this issue, has ruled consistently with what the appellate court ruled here. But in terms of your question regarding the message we sent, I believe that was the message that was attempted to be sent in the McCoy case. Whether or not that message is heard, whether or not that message is capable of being heard, really goes to the role of the trial judge sitting as a prior effect, and that we can't really, we can't challenge that, nor are we challenging that here. I see that I'm out of time, so the people would simply request that this court reverse the appellate court and affirm the convictions as found by the trial court. Thank you. Good morning, Your Honors. Good morning. My name is Gilbert Lenz, and I'm here on behalf of the State Appellate Defender, representing Appellee Fred Clark. Your Honors, the State, this morning, acknowledges that the versions of these offenses, the firearm and the dangerous weapon, other than the firearm versions, are mutually exclusive. Just as every appellate court is held. But the State says, by saying that, the appellate court is using an abstract elements approach. That's simply incorrect. Every appellate court after Barnett has applied this court's Colton charging instrument approach in a straightforward manner. What the State doesn't acknowledge is that the charging instrument here, by charging only a firearm, is mutually exclusive of the dangerous weapon other than a firearm version. This case involves a straightforward application of this court's charging instrument approach. Where the question is, can it be reasonably inferred from the State's allegation that Mr. Clark had a firearm, that the State was also alleging that he had something other than a firearm. As every court is held, there is no such reasonable inference. Nothing the State says here can negate the plain language of the statutes or the charging instrument. And nothing the State says here can give this court a reason to disturb the uniform body of precedent on this issue. The State's real quarrel here is with the plain language of the statute. And that's why this is a question for the legislature. This court should affirm the appellate court. I just want to mention, talk about a few points on the substantive issue of the lesser included defense. The State's, much of the State's argument here relies on mischaracterizing the legal issue before this court. And this applies also to the plain error question. This is not the traditional sufficiency of the indictment question. The State cites cases like Phillips and Morrison-Quadrado, where the defendant was convicted of the charged offense. And then on appeal, says that he had no notice of the charged offense. And this court places a very, very heavy burden on such a defendant to show that he was prejudiced in the preparation of his defense. That's a completely different situation with a completely different test. In Mr. Clark's case and all the cases like it, defendants stand convicted of an uncharged. In those situations, this court has crafted a test for that, and that's the charging instrument approach. And there's simply no basis for a reasonable inference that the State was charging Mr. Clark with having something other than a firearm when they only allege that he had a firearm. As the State says here this morning, they're mutually exclusive. Could they have charged him, in this case, with a dangerous weapon, using the gun as a bludgeon or what? How would that go? Well, the State has the discretion to file charges in every case that it sees fit. Whenever the State is concerned with the possibility that a defendant may be acquitted of having a firearm, it's up to the State to account for that possibility and charge the dangerous weapon other than a firearm version to avoid the necessary legal outcome that we see here, which is the conviction to be reduced to simple robbery or simple vehicular hijacking. Was there any evidence that the weapon was loaded? I believe when it was recovered, it was found loaded, yes, Your Honor. There is simply no four-tiered framework here. The State says that it's, as Your Honor said earlier, the State says that it's necessarily a less-included offense by being in the same armed robbery statute. But I think the problem with that position is revealed by looking at the other statute at issue here, the aggravated vehicular hijacking statute, where the legislature created six versions of the offense, including two based on the age or disability of the victim. And there's no argument that those two versions of the offenses are necessarily less-included of the firearm versions. One can imagine a statute that's written the way that the State's proposing it this morning, but that's not what the legislature wrote. They wrote, as this Court has held repeatedly and I'm compelled to give our heart to Washington, that there are two distinct categories of an offense, a firearm and a dangerous weapon other than a firearm. Finally, on the substantive point, Your Honor, that states, in terms of Justice Carmeier's question, the State is saying that you should look at the aggravated battery count. Mr. Clark's response on that is twofold. First and foremost, that doesn't help the State, because nowhere in this indictment, even in the aggravated battery count, are they saying that he had something other than a firearm. But second of all, and this is an important point, Your Honor, this Court's charging estimate approach has never looked at the other counts. And that's because the legislature defines an included offense as an offense that requires the same or less than the facts necessary to prove the greater offense. It's focused on the relationship between the greater offense and the lesser offense at issue. The charging estimate approach isn't about scouring the indictment for lesser-included offenses. And finally, Your Honor, if this Court agrees that this was error, this is the kind of error that requires correction despite fortitude. That's true for two reasons, both under the Plain Error Doctrine or alternatively, as a matter of ineffective assistance. And I'll stand on the brief on the ineffectiveness question and just conclude with a few comments about the Plain Error Doctrine. You're indicating this is second-pronged Plain Error? Yes, Your Honor. And the rule clearly says that Plain Error affecting substantial rights may be noticed, though they were not brought to the attention of the trial court. So that sounds discretionary with our Court. In second-pronged Plain Error, is that an abstract question or is it dependent to some extent on the facts of the case? And what I'm getting to is this. For purposes of Plain Error, we're considering whether conviction of an uncharged offense, if it's not a lesser-included offense, qualifies as second-pronged Plain Error. Or do we take into account the evidence which seems to indicate there could have been a conviction for the charged offense? In determining what happened here, did it affect the fairness of the defendant's trial and challenge the integrity of the judicial process where the defendant seems to have benefited by what happened instead of being prejudiced? Well, the defendant benefited by being included on the firearm element, but then that's a separate question from the necessary legal question that follows, which is what is the appropriate lesser offense that can be entered based on the charges? Where the state never alleged that Mr. Clark had something other than the firearm, the next most serious offense under the law that Mr. Clark can stand convicted of are the simple versions of the offense, the Class I. But my specific question is is substantial fairness involved here when the defendant actually reaped the benefit by what happened? When the evidence seems to indicate the trial court could have convicted of the charged offense, the more serious offense? Or is it a more abstract question just because if it is not a lesser included offense he cannot be found guilty of that even though the evidence would have sustained guilty of the greater? Well, it's not an abstract question. If this court reaches the Plain Error question, it's already found that Mr. Clark was improperly convicted of the dangerous weapon other than the firearm version. So then you've already found that there's a serious entry process violation that he stands convicted of uncharged offenses. The question is whether that rises to the level of Second Pronged Plain Error. And it certainly does in light of this court's precedent on that doctrine. This court has found a variety of errors to qualify as Second Pronged Plain Error. What I point this court to here that's most analogous is the One Act on Crime Doctrine, where from Harvey to Artis and Samantha V this court has consistently said that an entry of an improper conviction is Second Pronged Plain Error. And in Samantha V the court looked for, at length I'm not going to say struggled, but looked for what is the prejudice and ultimately said, well, there was certainly enough evidence to support these, the one charge, the idea that this event took place, but it's One Act on Crime, and two more additional convictions might have some parole implications or some prejudice on the line. So what is the prejudice here, where let's say he was convicted of something that was not a lesser included, but he could have been convicted of something more and gotten 15 years more. Where is the prejudice to him? The prejudice is that he stands convicted of, there's a constitutional presumption against being convicted of an uncharged offense. And where that conviction for an uncharged offense is not a lesser included offense, that's a serious due process violation. He now stands convicted of a more serious crime than is allowed under the law, after he was acquitted of the firearm allegation. And that's true for Mr. Clark and the other defendants in these cases. It's a much more serious error than the errors in the One Act on Crime violation case, which this court has always held to be presumptively prejudicial in requiring this correction despite forfeiture. This is a much more serious error in those cases. And if the second crime reaches One Act on Crime, it has to reach entry of conviction for an improper. Explain more why it's more serious than the One Act on Crime. Well, One Act on Crime violation of the relief is that let's say that there's one surplus conviction that appears on the minimus, that conviction is vacated. But the class of defendant's conviction is not reduced, the sentence is not reduced, but there are enough prejudicial factors from having a surplus conviction that this court has recognized that it still requires relief. And here, in all these cases, the defendants stand convicted of an offense that's more serious and are serving sentences that are more serious than is allowed under the law. These defendants are presumptively prejudiced by the fact that they are convicted of more serious offenses than is allowed under the law. And it's a much more serious error than a One Act on Crime violation. This is what the second prong of the plain error doctrine was. This is exactly the kind of error that that doctrine should reach. And this court should affirm the appellate court on both the substantive issue and on the plain error doctrine. Of course, the trial judge never explicitly said he's not guilty of the charged offense, but by implication of finding guilty of the lesser included, that's an acquittal of the greater. Again, that goes back to my question. Do we look at the facts of the case to determine whether second prong plain error should be applied here to this defendant in this case, or do we use discretion and say, what's the prejudice to the defendant? The real prejudice. This is not the kind of error that can be weighed in light of the trial evidence. On the state, I believe it's trying to say that this should be considered on the first prong by recharacterizing it as a sufficiency of indictment issue. It's not an error that can be weighed in light of the trial evidence. We know he was acquitted on the firearm element. So then, after that, there's a very straightforward legal question of what he may stand convicted of. And the prejudice is when the trier of fact then enters conviction on offense that's greater than what is allowed by the law. That's presumptively prejudicial. If there are no further questions, Your Honor, we would ask that you affirm the judgment of the appellate court. Thank you. Thank you. Very briefly, Your Honors. First, in response to your question, Justice Garmon, as to whether or not the people could have or should have charged the defendant in this case with the lesser offense of the dangerous weapon forms of the offenses. I don't believe it was necessary or appropriate to do so. Duplicative indictments pose a problem across the board for trial to predict what the trial is going to be about. The only difference in this case, had there been a duplicative indictment, would have been whether or not it was charged as a firearm or not a firearm. At the time, certainly, the charges were made. The case law had always recognized that firearms are dangerous weapons. And so up until the Barnett case, no court had ever held otherwise. And so that would have been a very different scenario, a very different charging choice that we made at that time. In response to the counsel's assertion regarding the Samantha B case and second pronged plain error, the Samantha B case, as you pointed out, Justice Tice, struggled to find the appropriate form of prejudice as to why it would fall under second pronged plain error. And what the court recognized was the future prejudice that would necessarily exist from having improper additional convictions on a juvenile delinquents record. Because there would be no way to prevent them from being considered in bond or in parole decisions or in any kind of sentencing scenario. And so the only way to protect the defendants from those additional convictions was to resolve them in the direct appeal. Particularly in that case, as it was a general case, there would be no post-conviction available. 214.01 was very limited. And so the prejudice which was identified in Samantha B was clear and apparent as to what would happen with those additional convictions. That is not the case in this scenario. Excepting for purposes of argument that this was not a lesser included offense, clearly the defendant still has an obligation to establish prejudice. Had he objected at the time in trial, the first question the judge would have asked is, why are you saying that? What is your prejudice? It would have been a discussion of surprise, of unfair surprise. Exactly what happened in this court in the Jones case. Jones, again, this court talked about common sense, but more importantly, for purposes of this discussion, talked about the absence of any complaint or unfair surprise on behalf of the defendant. Because questions of propriety of the indictment, questions of the scope of the indictment have always been assessed for purposes of prejudice. Meaning they're not akin or comparable to the second prompt plain error. This court in Glasper, in Thompson, specifically equated second prompt plain error with the very limited list of structural error. Admittedly it is not coterminous, it is not identical to that list, but they must be comparable. They must be akin. And so the examples that this court has found, second prompt plain error, reach that level. Samantha B in particular because there was no other way to assess clear and identifiable prejudice. Likewise in the Walker case, it was akin to having no counsel at all where the defendant's attorney was not ready for trial and it was clear on the record. And it's for that reason that this type of scenario where the defendant has a full and fair trial, where there are no problems with the trial, where the defendant's attorney successfully gets the conviction reduced to a lesser offense with a significantly lower sentencing range, where the defendant benefits from what appears to be a longer sentence, cannot say that this conviction in this trial offends the integrity of the judicial process. And it's for that reason that we would ask that this court reverse the appellate court and hold that the original convictions as entered by the court You're no longer arguing that the defendant was not acquitted of the charged offense? No, your honor. That was our position in the appellate court, but clearly under Evans v. Michigan and other cases that was not a correct argument to have made. The trial judge, as a prior fact, has the authority to acquit the defendant right or wrong for whatever reasons. And once the acquittal is entered, the implied acquittal in this case, there's nothing that the state can do, that the people can do to try and undo that. And you touched on this in your comments a moment ago about what the attorney should have done or could have done had the attorney objected at the time the judge is saying, well I'm going to what the judge perceived as a lesser included. What would happen? Procedurally what could happen? Could he have then been found guilty at that point of the charged offense? There is some case law from this court in particular that the court can correct itself immediately upon a finding. So counsel was put in a kind of a box there? Possibly, but more importantly your honor, I think the key is that would have been the point where the judge would have specifically said to the defense attorney, what is your prejudice? There would have been an establishment of prejudice. We wouldn't be engaging in a second prompt plain error discussion at all. I would liken this case to Colton, where Colton where the defendant did specifically object to the trial judge finding the defendant guilty of the lesser offense by claiming it was not a lesser included offense. There was that discussion in the record in Colton about whether or not the defendant was prejudiced. That didn't happen here. That absence of that discussion is what triggers the prejudice. But had the defendant made that, we would easily be able to assess it under a first prompt plain error. Was there sufficient prejudice? But because there was an absence of that discussion, the defendant is now essentially claiming the benefit of the not objective. And it's for that reason that we think this is not akin or comparable to the structural errors. So for all those reasons, again, we respectfully request that this court reverse the appellate court and affirm the trial court rule. Thank you. Thank you. Case number 118845 People of the State of Illinois v. Fred Clark will be taken under advisement as Agenda 2. Mr. Spellberg and Mr. Lenz, thank you. Your arguments this morning, you're excused.